MERIDIEN HOTELS, INC. and MHI
Leasco Dallas, Inc., Appellants

v.

LHO FINANCING PARTNERSHIP I,
L.P., Successor in Interest to Lasalle
Hotel Operating Partnership, L.P.,
Appellee.

No. 05–06–00489–CV.

Court of Appeals of Texas,
Dallas.

May 28, 2008.

See also 833 So.2d 1010.

David E. Keltner, Kelly Hart & Hall-man, LLP, Fort Worth, Darrell Wayne Cook, Darrell W. Cook & Associates, P.C., Dallas, Thomas Patrick Lane, Winston & Strawn, L.L.P., New York, NY, for Appellants.

Ben L. Krage, Krage & Janvey, L.L.P., Dallas, William T. Bosch, Steptoe & Johnson, L.L.P., Washington, DC, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION ON REHEARING

Opinion by Justice FITZGERALD.

This Court's opinion of February 11, 2008 is withdrawn and this Court's judgment of that date is vacated. The following is now the opinion of this Court.

Meridien Hotels, Inc. (Meridien) and MHI Leasco Dallas, Inc. (Leasco), appeal the trial court's judgment rendered in favor of LHO Partnership I, successor in interest to LaSalle Hotel Operating Partnership, L.P. (LaSalle). This case concerns the construction of a lease between LaSalle as lessor and Leasco as lessee.

Appellants bring six issues asserting the trial court erred (a) in determining Leasco had breached the lease, (b) in hearing La-Salle's motion for summary judgment without allowing LaSalle to conduct discovery, (c) in ordering Meridien to pay to LaSalle the management fees paid to it by Leasco as damages for trespass, (d) awarding prejudgment interest on holdover rent, and (e) in determining the value of stock constituting Leasco's security deposit that LaSalle used to offset its damages. LaSalle brings one crosspoint contending the trial court erred in refusing to make Meridien jointly and severally liable with Leasco for the holdover rent. We vacate the award of damages against Meridien; we also vacate the award of prejudgment interest on the award of damages for holdover rent against Leasco, and we remand that issue to the trial court for further proceedings; and we otherwise affirm the trial court's judgment.

## BACKGROUND

LaSalle is the owner of the real property that included the Meridien Hotel in downtown Dallas. Before 1998, LaSalle owned the hotel and Meridien operated it. In February 1998, the relationship was reformed so that LaSalle leased the hotel space to a Meridien entity, Leasco, and Leasco paid LaSalle rent. The hotel was operated by Meridien, and Leasco paid Meridien fees to manage the hotel.

The lease contained a provision concerning the rights of LaSalle if the tenant, Leasco, were to undergo a change of control. Under section 22.22, if Leasco's parent transferred its interest in Leasco to a third party, the transfer would be a "Permitted Transfer" only if it was in conjunction with the sale of all or substantially all

of the parent's hotel-management businesses. The "Permitted Transfer" could be made only upon compliance with a list of terms and conditions. The terms and conditions required the parent to give La-Salle "written notice of the proposed Permitted Transfer," after which LaSalle would have thirty days to decide whether to purchase the parent's interest in Leasco for its fair market value [1] and deliver notice of its intent to purchase. If LaSalle decided to purchase Leasco, then the closing had to occur within 60 days of the parent's delivery of notice of the transfer. If the parties could not agree on the fair market value of the parent's interest in Leasco, the issue was to be submitted to binding arbitration, which "to the maximum extent practicable" was to be concluded within ninety days of filing the arbitration claim. If there was a change in control of Leasco other than as provided in Section 22.22, LaSalle had the right to terminate the lease on thirty days' notice and evict Leasco. The lease also provided it could be modified in writing and "signed by the party to be charged."

On June 1, 2001, Leasco's parent gave LaSalle notice that it was selling substantially all of its Meridien hotel-management businesses, including Leasco. The parties agreed in writing three times to extend the time for LaSalle to decide whether to purchase Meridien's interest in Leasco. On October 19, 2001, in the last extension agreement, the parties agreed that if La-Salle was going to purchase, it had to deliver its notice of intent to purchase by January 31, 2002, and the agreement provided that the closing "shall occur not later than February 28, 2002." On January 14, 2002, LaSalle gave appellants notice of its intent to purchase Leasco and stated the

---

1. Leasco's only significant asset was the lease. Thus, the fair market value of Leasco's parent's interest in Leasco, Leasco's fair market value, and the fair market value of the lease were the same.

purchase would take place within "thirty (30) days from the date hereof." The January 14, 2002 notice stated the hotel's new tenant would succeed to Leasco's rights under the lease. The notice letter did not state LaSalle's estimation of Leasco's fair market value. However, attached to the notice were checklists and schedules for the transition; one of these listed the monies to be transferred between LaSalle and Leasco and stated, "Lease Fair Market Value (assumed to be $0)."[2]

On January 15, 2002, LaSalle sent appellants requests for information that the new tenant, Starwood Hotels, would need for the smooth transition on the closing date, which LaSalle stated would be February 14, 2002.[3] On January 16, 2002, Leasco commenced an arbitration proceeding to determine its fair market value. The same day, appellants also filed suit in district court requesting the court declare that the closing on the sale of Leasco could not occur until determination of Leasco's fair market value and to declare that any provisions in the lease allowing LaSalle to enforce the purchase provision without paying any consideration were void for absence of mutuality. Also on January 16, 2002, appellants sent a letter to LaSalle stating in light of LaSalle's failure to comply with the terms of the lease, "we do not anticipate being able to participate in a February 14, 2002 transition. Until the relevant terms of the Lease are satisfied, and determined to be enforceable, your demands are premature." The letter did not state which provisions of the lease were not followed or enforceable.

The next day, January 17, 2002, LaSalle sent Leasco notice of default and termination of the lease due to Leasco's "failure to cooperate in the orderly transition of the Hotel, and its [Leasco's] stated intention not to vacate and surrender the Hotel on the Effective Date [the February 14, 2002 closing date] set forth in Landlord's Purchase Notice." Under the lease, Leasco had thirty days from the notice of default and termination to cure the default before the lease would be terminated. On January 30, 2002, LaSalle moved to stay the arbitration proceeding asserting it was moot due to the termination of the lease.

On January 31, 2002, appellants filed a motion requesting a temporary injunction prohibiting LaSalle from taking further steps to transfer management and operation of the hotel to Starwood. Leasco also requested that the court toll the thirty-day termination period until the court reached a final decision.

On February 4, 2002, LaSalle filed a counterclaim requesting the court declare LaSalle's rights under the lease and order Leasco to vacate the premises by February 14, 2002 and assist in an orderly transition of the hotel. LaSalle also requested the court declare that Leasco's actions constituted a default under the lease and that the arbitration proceeding to determine fair market value was void.

On February 13 and 14, 2002, the trial court held a hearing on the competing requests for declaratory and injunctive relief. The court denied appellants' request

2. LaSalle's chief operating officer, Michael Barnello, testified at the February 13–14, 2002 hearing on the parties' motions for injunctive relief that LaSalle assumed the lease had a fair market value of $0 because there was no market for such a short lease (there were six years remaining in the lease's term) and the hotel had been one of the worst performers in its class of hotels for the past few years.

3. February 14, 2002 is thirty-one days after January 14, 2002, but the parties treated it as if it were the thirtieth day. No complaint was made at trial or on appeal about February 14 being more than thirty days after January 14, 2002.

for injunctive relief because the court concluded they probably would not prevail at trial. The court concluded LaSalle probably would prevail at trial but denied the temporary injunction because granting the requested relief—ordering Leasco to vacate the premises—would grant Leasco all the relief it sought, which would be improper for a temporary injunction. The court also concluded that section 22.22 of the lease was enforceable. The trial court also ruled that the arbitration could go forward on the issue of the fair market value of Leasco.

On February 4, 2002, LaSalle moved for summary judgment, asserting that Leasco was required to vacate the premises and that the closing on the purchase of Leasco could occur before determination of Leasco's fair market value. On May 10, 2002, the trial court rendered partial summary judgment, ruling,

(1) Section 22.22 of the lease is enforceable, and a closing on the Purchase pursuant to section 22.22 may occur prior to the determination of fair market value.
(2) [Leasco]'s refusal to close on the purchase on the date specified in LaSalle's purchase notice and to surrender possession of the premises constitute an event of default under section 12.1(m).
(3) As a result of [Leasco]'s event of default under the lease, owner has the right and lawfully has exercised the right to terminate the lease pursuant to section [21.11(b) ] which termination became effective as of February 17, 2002.
(4) [Leasco] and Meridien, Inc. no longer have a lawful right of possession to the hotel.

On March 6, 2002, appellants amended their petition to add a fraud claim, alleging LaSalle misrepresented its intent to pay fair market value for Leasco, which induced Leasco to agree to the extensions of time for LaSalle to determine whether to purchase Leasco. LaSalle moved for summary judgment on the fraud claims, which the trial court granted on June 20, 2003.

LaSalle brought an action for forcible entry and detainer, obtained a judgment for possession of the premises, and appellants vacated the hotel on July 14, 2003.

Meanwhile, in August 2002, LaSalle amended its counterclaim. Besides the earlier claims for declaratory and injunctive relief, LaSalle alleged Leasco breached the contract by refusing to close on the purchase, failing to cure after notice of default, failing to surrender possession of the hotel after notice, failing to pay property taxes, and failing to pay holdover rent. LaSalle alleged Meridien was in breach of contract by continuing to manage and operate the hotel despite termination of the lease and the resulting termination of the management agreement. LaSalle sought damages of forfeiture of Leasco's security deposit, disgorgement of all proceeds derived from the operation and management of the hotel earned after the lease terminated on February 17, 2002, holdover rent of 1.5 times the agreed rent, and unpaid personal property taxes. LaSalle also alleged appellants committed trespass by remaining in possession of the premises and managing and operating the hotel after termination of the lease. LaSalle sought actual damages for trespass as well as disgorgement by appellants of all revenues earned from the hotel during the period of trespass.

The case went to trial on LaSalle's claims in March 2005. The trial court's final judgment stated the first partial summary judgment resolved LaSalle's breach of lease claim against Leasco. The court awarded LaSalle damages of holdover rent against Leasco of $2,130,136, plus prejudgment interest. The court subtracted from this award Leasco's security deposit, which

LaSalle had retained. The court also awarded LaSalle judgment against Meridien for the $507,010 of management fees Meridien collected from Leasco, plus prejudgment interest. LaSalle requested that Meridien be jointly and severally liable with Leasco for the holdover rent damages, but the trial court denied that request.[4]

Besides the hotel in Dallas, LaSalle and Meridien had an identical arrangement in New Orleans. There, the Meridien entity constituting the lessee was MHI Leasco New Orleans, Inc. However, the litigation in the Louisiana courts came to a different result. The key difference in the two cases is the outcome of the hearings for injunctive relief in 2002. As discussed above, the Texas court denied the requests for injunctive relief. In Louisiana, however, the court granted Meridien and Leasco New Orleans's request for a preliminary injunction and stayed the proceedings until the parties arbitrated the fair market value of Leasco New Orleans. *See LHO New Orleans v. MHI Leasco New Orleans, Inc.*, 833 So.2d 1010, 1012 (La.Ct.App.2002). The injunctive relief hearing took place before Leasco New Orleans was in default under the lease, and because of the stay, it could not be in default until after the stay was lifted. *See id.* at 1016.

## SUMMARY JUDGMENT

The standard for reviewing a summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 881 (Tex.App.-Dallas 2007, no pet.).

## CONTRACT INTERPRETATION

In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex.2005) (per curiam); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex.App.-Dallas 2006, pet. denied). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312; *Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 55–56. If the agreement is susceptible to more than one reasonable interpretation, it is ambiguous. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006); *Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 56. Whether an agreement is ambiguous is a question of law. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006) (orig.proceeding). The ambiguity must be evident by examining the document itself; it cannot be created by considering parol evidence of the parties' intent. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747

---

4. The trial court also awarded LaSalle attorney's fees of $1,425,000 for the entirety of the litigation to that point. Under the judgment, Leasco was liable for the entire amount, and Meridien was liable for $250,000 of that amount, which represented the attorney's fees applicable to the forcible-entry-and-detainer litigation resulting in the eviction of appellants from the hotel. Meridien does not challenge its liability for that portion of the attorney's fees award.

(Tex.2006); *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 283 (Tex. 1996) (per curiam). If the agreement is not ambiguous, and therefore is not susceptible to more than one reasonable interpretation, then the courts do not consider extrinsic evidence in interpreting the agreement. *Fiess,* 202 S.W.3d at 747; *Friendswood Dev. Co.,* 926 S.W.2d at 283.

## LEASE PROVISIONS

Most of the issues in this case concern the interpretation and application of section 22.22 of the lease concerning the parties' rights when Leasco is about to undergo a change in ownership. Section 22.22 provides,

> *Change of Control of Tenant.* If, during the Term, any Parent or Affiliate (each a *"Transferor"*) of Tenant has elected to transfer its interest in Tenant to a third party which is not an affiliate of Tenant, which for the purposes of this Agreement shall only be permitted in conjunction with the sale of all, or substantially all, of Transferor's hotel management businesses (a *"Permitted Transfer"*), then such Permitted Transfer shall be made only upon the following terms and conditions:
>
> > (a) Transferor shall give written notice of the proposed Permitted Transfer to Landlord (the *"Sale Notice"*);
> >
> > (b) Landlord shall have thirty (30) days from the date of receipt of the Sale Notice to provide Transferor with written notice (the *"Purchase Notice"*) of Landlord's intention to purchase, in Landlord's name or in the name of Landlord's designee, Transferor's interest in Tenant at the then Fair Market Value of such interest (the *"Purchase"*);

\* \* \*

> (e) The closing of the Purchase ... shall occur within sixty (60) days from the later to occur of ... delivery of the Sale Notice ...;
>
> (f) If the parties fail to agree on the Fair Market Value of the respective interests in Tenant, the matter shall be referred to arbitration as provided for in *Article 23; provided, however,* unless and until the Fair Market Value of the respective interests in Tenant have been fully determined, Landlord shall have no obligation to complete the Purchase....

Section 21.11(b) of the lease provides,

> Upon the occurrence of ... (iv) a Change of Control in Tenant (other than as provided in *Section 22.22* ) ..., Landlord shall have the right, at Landlord's option, to terminate this Agreement upon thirty (30) days' Notice to Tenant, in which event this Agreement and the Management Agreement shall terminate and Tenant shall immediately surrender the Leased Property to Landlord after the expiration of such 30 day period....

## DEFAULT UNDER SECTION 22.22

█ In the first issue, Leasco asserts the trial court erred in determining it defaulted under section 22.22 by failing to close on February 14, 2002 and that the failure to close permitted LaSalle to terminate the lease under section 21.11(b). Leasco asserts there is no default under section 21.11(b) when the change of control of Leasco is a "Permitted Transfer" as defined in the opening paragraph of section 22.22, that is, a transfer in conjunction with the sale of substantially all of Leasco's parent's hotel-management businesses. LaSalle argues that section 21.11(b) permitted it to terminate the lease when a transfer that is part of the sale of substantially all of Leasco's parent's hotel-

management businesses fails to comply with paragraphs (a) through (f) of section 22.22. Therefore, according to LaSalle, it was entitled to terminate the lease under section 21.11(b) when Leasco refused to close the transaction and surrender the premises as required by paragraph (e) as modified by the parties' agreements.

We agree with LaSalle's interpretation of the contract and disagree with appellants'. Section 22.22 contained a two-part definition of "permitted transfer." The first part is the requirement that the transfer be a part of the sale of all of the parent company's hotel-management businesses. The second part is that the transfer "shall be made only upon the following terms and conditions," paragraphs (a) through (f). If a "permitted transfer" can be made "only upon" certain conditions, then the failure to meet those conditions results in the transfer not qualifying as a "permitted transfer" under the lease. Under section 21.11(b), a change of control of Leasco that is not a "permitted transfer" under section 22.22 is "a Change of Control in Tenant (other than as provided in *Section 22.22* )," which authorized LaSalle to terminate the lease. Sections 21.11(b) and 22.22 of the lease gave LaSalle an absolute right to terminate the lease following a change of control of Leasco. If appellants followed the provisions of section 22.22, then Leasco's parent would receive Leasco's fair market value. If they did not follow section 22.22, LaSalle was entitled to terminate the lease, but Leasco's parent would receive nothing for Leasco from LaSalle.

■ Appellants next assert they did not breach the lease by refusing to close because they were not required to close until Leasco's fair market value had been agreed upon or determined in arbitration. They cite cases for the proposition that a contract which leaves essential terms open

for later negotiation is unenforceable until the essential terms are fixed. *Cent. Tex. Micrographics v. Leal*, 908 S.W.2d 292, 297 (Tex.App.-San Antonio 1995, no writ); *see also COC Servs. Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex.App.-Dallas 2004, pet. denied); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 644 (Tex. App.-Corpus Christi 1984, no writ). However, a purchase agreement for real property that does not contain the purchase price is enforceable if the agreement contains a standard for determining the purchase price. *Penwell v. Barrett*, 724 S.W.2d 902, 905 (Tex.App.-San Antonio 1987, no writ) (agreement that purchase price for real property would be appraised value of property was sufficient to establish purchase price). In this case, the purchase price was not left for later negotiation. Instead, the lease provided a standard for determining the purchase price in the event of the parties' inability to agree on the price: the price would be determined by an arbitrator following the procedures in article 23 of the lease. We conclude the lease's failure to set an exact purchase price for LaSalle's purchase of Leasco did not render that part of the lease unenforceable.

■ Appellants also argue that the purchase price had to be determined before closing could occur because paragraph (f) of section 22.22 provides, "unless and until the Fair Market Value of the respective interests in Tenant have been fully determined, Landlord shall have no obligation to complete the Purchase." Paragraph (f) gave LaSalle—but not appellants—the right not to complete the purchase until after determination of the purchase price, Leasco's fair market value. Appellants argue paragraph (f) gave LaSalle the right to decide not to complete the purchase if it was dissatisfied with the fair market value as determined

by the arbitrator. Thus, they argue, if the closing and Leasco's surrender of the premises could be required before determination of the purchase price, then "LaSalle could essentially kick Meridien out of the Hotel, participate in the arbitration but then pull out if it did not like where the arbitration price was headed. This would be a ludicrous interpretation." This interpretation of paragraph (f), which is the basis of their argument, is incorrect. Paragraph (f) gave LaSalle the right to delay the closing until after determination of Leasco's fair market value. Paragraph (f) did not permit LaSalle to force the closing and then not pay the arbitrated price. Nor does it permit LaSalle to avoid either purchasing Leasco or paying the price set by the arbitrator.

We construe the plain language of section 22.22, article 23, and the letter agreements modifying the lease to provide as follows: After receiving notice of the sale of Leasco as part of a sale of the parent company's hotel-management businesses, LaSalle had until January 28, 2002 to determine whether to purchase Leasco. If it decided to purchase Leasco, the closing had to occur before February 28, 2002. If the parties could not agree on a purchase price, the issue of the purchase price would be submitted to binding arbitration, which the parties would conclude within ninety days if practicable. LaSalle had the right to delay the closing until after determination of the fair market value; but once the fair market value was determined, it had to pay the price determined by the arbitrator to be Leasco's fair market value. Thus, the agreement contained two timelines: one for closing (no later than February 28, 2002 unless LaSalle decided to delay closing until determination of fair market value), and one for determination of Leasco's fair market value through arbitration (within ninety days of the filing of the arbitration action, if practicable). Giving effect to all provisions of the lease, we conclude section 22.22 as amended and article 23 authorized a closing to occur before determination of Leasco's fair market value.[5]

■ Appellants also argue that if there is no payment of fair market value at the closing, then there is no closing as the term is generally understood. They define the closing of a sale as the exchange of the item sold for the consideration agreed upon. *See John Wood Group USA, Inc. v. ICO, Inc.,* 26 S.W.3d 12, 20 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). They assert the agreed consideration was Leasco's fair market value. Section 22.22 and article 23, however, when read together show that the consideration is either (1) the agreed fair market value of Leasco or (2) the promise to pay the fair market value when determined through arbitration.

■ Appellants also argue that if the fair market value of Leasco is not paid at the closing, then LaSalle will not have given any consideration for Leasco. This argument overlooks the fact that LaSalle's act of sending the notice of intent to purchase was a binding promise to pay the fair market value when it was determined. This promise, which, if appellants had complied with section 22.22, would have continued through determination of Leasco's fair market value and obligated LaSalle to pay the sum determined by the arbitrator, was adequate consideration to support the closing.

Appellants also argue that section 22.22 should not be read to permit LaSalle to defer paying the fair market value until

---

**5.** Our interpretation of these provisions is consistent with the Louisiana Court of Appeals' interpretation. *See LHO New Orleans,* 833 So.2d at 1014.

after the closing because section 22.22 does not expressly provide for deferring the payment while section 22.20 does expressly authorize deferral of an early termination fee. Under section 22.20(b), if the landlord, LaSalle, sold the premises and the new owner terminated the lease of the tenant, Leasco, the tenant would have the choice of receiving from the landlord either (i) payment of a termination fee calculated using specific equations or (ii) an offer to lease a comparable hotel property having an aggregate fair market value not less than the fair market value of the original lease. If the tenant chose the comparable hotel property, the landlord had twelve months to proffer the lease for the other property. If the tenant rejected the offered property, the landlord would be entitled to defer payment of the termination fee up to eighteen months after termination of the original lease, during which it must offer the tenant two more leases of comparable hotel properties. If the landlord failed to offer the two additional properties, the termination fee would be due at the end of the eighteen months. If the tenant rejected both of the properties, the termination fee would be immediately due. If the parties were unable to agree on a fair market value of either the original lease or the proffered comparable property, the dispute would be resolved through the arbitration procedure of article 23 of the lease. Section 22.20 expressly provided for deferment because the deferment and proffer of leases of other properties was an alternative option for the landlord to paying the termination fee after rejection of the first property. Under section 22.22, deferring payment of Leasco's fair market value is not an option for LaSalle: under the parties' agreements, the closing was required to take place no later than February 28, 2002. If the fair market value was agreed upon or determined by the closing date, it was due at closing. If

the fair market value was not agreed upon or determined by the closing date, it was due when finally determined by the arbitrator. Thus, the fact that section 22.20 expressly mentions deferring payment of the termination fee has no bearing on whether section 22.22 had to expressly mention deferring payment of Leasco's fair market value until the conclusion of arbitration to determine that value.

■ Appellants also argue that "[i]n light of the various possible interpretations of § 22.22," the provision is ambiguous and parol evidence of the meaning of the provision should be considered. We disagree; section 22.22 is not ambiguous. As discussed above, the provision has a clear meaning, and we conclude it is not susceptible to more than one reasonable interpretation.

■ Appellants also argue that termination of the lease for failure to comply with section 22.22 would constitute a forfeiture and, as appellants observe, forfeitures are not favored. *See Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966); *Dobson v. Dobson*, 594 S.W.2d 177, 180 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). Forfeiture of a contract is to be avoided when another reasonable reading of the contract is possible. However, a clear and specific forfeiture provision in a contract will be honored. *Dobson*, 594 S.W.2d at 180 (quoting *Ogilvie v. Hill*, 563 S.W.2d 846, 849 (Tex.Civ.App.-Texarkana 1978, writ ref'd n.r.e.)). In this case, section 21.11(b) expressly provided that a change of control other than one provided by section 22.22 gave LaSalle the right to terminate the lease on thirty days' notice requiring Leasco to vacate and surrender the premises at the end of the thirty days. No reasonable reading of the lease avoids this interpretation. This clear and specific provision is enforceable even

though it may result in a forfeiture of the remaining term of the lease and the fair market value of the lease.

Applying section 22.22 to the undisputed facts, LaSalle gave notice of its intent to purchase on January 14, 2002 and stated the closing would occur on February 14, 2002. LaSalle stated it presumed the purchase price would be $0. Appellants did not offer a higher fair market value for Leasco;[6] instead, they refused to close before determination of fair market value and a court ruling on the validity of the contract. On January 17, 2002, LaSalle informed Leasco that its refusal to follow the requirements of the lease constituted a default and that it had thirty days to cure. Leasco still refused to close. February 14 (the original closing date) and February 17 (the deadline for curing the default under LaSalle's January 17 notice of default) came and went without Leasco agreeing to close. Leasco's failure to comply with section 22.22 resulted in the change of control being other than as provided in section 22.22, and under section 21.11(b) of the lease, LaSalle was entitled to declare the lease terminated.

We overrule appellant's first issue.

### DENIAL OF DISCOVERY

■ In their second issue, appellants assert the trial court erred in granting partial summary judgment on the lease-construction claims because the trial court did not allow discovery into the facts surrounding the contract and change of ownership. A properly presented argument contains "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(h). Appellants argument on this issue contains no citation to the record where they requested any discovery before the trial court ruled on the motion for summary judgment. Appellants cite to a letter dated March 13, 2003, ten months *after* the court rendered partial summary judgment on the lease-construction claims, that memorialized the parties' deposition schedule, but appellants do not cite to any request for discovery made before the summary judgment hearing or to any request for continuance until additional discovery could be taken. Nor do they explain why additional discovery was necessary on the lease-construction issues. We conclude this issue is not properly briefed, and the asserted error is waived. *See id.*

■ However, even if the trial court erred in granting the motion for summary judgment before permitting further discovery, under rule of appellate procedure 44.1, we do not reverse a judgment on the ground that the trial court made an error of law unless the error probably caused the rendition of an improper judgment or probably prevented appellants from presenting the case on appeal. Tex.R.App. P. 44.1(a). In this case, the parties' course of dealing under the lease was undisputed. The lease itself was unambiguous. Thus, the trial court could not consider extrinsic evidence in interpreting the lease. *Fiess*, 202 S.W.3d at 747; *Friendswood Dev. Co.*, 926 S.W.2d at 283. Accordingly, additional

---

**6.** At the February 13–14, 2002 hearing on the parties' motions for injunctive relief, Robert White, senior vice president of Meridien, testified that Meridien did not make a counteroffer because it had not yet reached its own conclusion of Leasco's fair market value. Meridien had "given some thought to the matter" and had hired experts to advise it on the issue. The facts show Meridien knew, or should have known, no later than June 1, 2001 that Leasco's fair market value would be an important issue. However, White did not explain why seven and one half months was insufficient time for Meridien to make a reasonable estimation of Leasco's fair market value.

discovery could not have affected the outcome of LaSalle's motion for partial summary judgment on the lease-construction claims. We conclude any error was not harmful. We overrule appellants' second issue.

## MANAGEMENT FEES

■ In their third issue, appellants contend the trial court erred in ordering that LaSalle recover from Meridien disgorgement of the management fees paid to Meridien by Leasco between the termination of the lease and Leasco's vacating the premises. The parties do not dispute the trial court found Meridien liable for trespass. Appellants assert that disgorgement of the management fees is not an appropriate measure of damages for trespass.

■ Recovery of actual damages in trespass for temporary injury is limited to the amount necessary to place the plaintiff in the position it would have been in but for the trespass. *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978), *disapproved on other grounds by Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 273–74 (Tex.2004). These damages include cost of restoration or repair of the land to its former condition, *Moore v. Rotello,* 719 S.W.2d 372, 378–79 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); loss of use of the land, *Brazos Elec. Power Co-op., Inc. v. Taylor,* 576 S.W.2d 117, 120 (Tex. Civ.App.-Waco 1978, writ ref'd n.r.e.); and loss of expected profits from use of land, *Mangham v. Hall,* 564 S.W.2d 465, 468 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). Damages for permanent injury to real property include the difference in the market value of the land, *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984), the difference in market value of a building, *McDaniel Bros. v. Wilson,* 70 S.W.2d 618, 621 (Tex.Civ.App.-Beaumont 1934, writ

ref'd); and the value of lost minerals, *Mayfield v. Benavides,* 693 S.W.2d 500, 506 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.).

■ In this case, during the period of trespass, appellants continued to pay LaSalle the rent that would have been due under the lease, and the trial court rendered judgment against Leasco and in favor of LaSalle for the extra rent under the lease's holdover-rent provision. LaSalle does not explain why these damages would not make it whole. LaSalle observes that "[d]isgorgement does not aim to compensate the victim of wrongful acts and may amount to more or less than that required to make the victim whole." However, the measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less. *See Kraft,* 565 S.W.2d at 227. Thus, disgorgement is not an appropriate remedy for trespass under these circumstances.

Moreover, disgorgement is a remedy applied to breaches of fiduciary duty, and the cases LaSalle cites in support of disgorgement involve fiduciaries. *Sec. & Exch. Comm'n v. Huffman,* 996 F.2d 800, 801–02 (5th Cir.1993) (disgorgement of misused investor funds); *Burrow v. Arce,* 997 S.W.2d 229, 239–40 (Tex.1999) (disgorgement of fees paid to attorney who breached fiduciary duty); *Int'l Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 584 (Tex. 1963) (corporate officers and directors' disgorgement of profits and commissions from breach of fiduciary duty). None of the cases LaSalle cites involved trespass or parties who are not in a fiduciary relationship.

We sustain appellants' third issue.

## PREJUDGMENT INTEREST ON HOLDOVER RENT

In the fourth issue, appellants assert the trial court erred in awarding LaSalle pre-

judgment interest on the unpaid holdover rent.

The parties do not dispute that the trial court's award of prejudgment interest on the unpaid holdover rent was based on section 304.002 of the finance code applying section 3.2 of the lease, which provides a late charge in the form of interest on certain categories of overdue rent. Section 3.2 of the lease provides,

> If any installment of Minimum Rent, Participating Rent or Additional Charges (but only as to those Additional Charges which are payable directly to Landlord) shall not be paid within ten (10) days after its due date, Tenant shall pay Landlord, on demand, as Additional Charges, a late charge (to the extent permitted by law) computed at the Overdue Rate on the amount of such installment, from the due date of such installment to the date of payment thereof.

The "Overdue Rate" is defined as Citibanc, N.A.'s prime rate plus five percent.[7] "Minimum Rent" is the base rent amount computed according to formulas in the lease and paid monthly. "Participating Rent" is additional rent based on the gross revenues of the property. "Additional Charges" are a laundry list of charges and include items such as utility charges, insurance premiums, operating charges of the property, etc.

"Rent" is defined as "collectively, the Minimum Rent, Participating Rent, and Additional Charges." The phrase "holdover rent" does not appear in the lease. The phrase is a description of the rental rate authorized by section 13.1 of the lease: "Any holding over by Tenant after the expiration or sooner termination of this Agreement shall be treated as a daily tenancy at sufferance at a rate equal to one and one-half (1.5) times the Rent and other charges herein provided (prorated on a daily basis)."

Under section 13.1 of the lease, the rent during the period of holding over was one-and-one-half times the usual rent. Appellants argued the extra one-half of the usual rent constituted a penalty, and they assert that prejudgment interest does not accrue on punishment or punitive damages. Appellants assert that prejudgment interest cannot be recovered on punitive damages; accordingly, prejudgment interest should not apply to the holdover rent in excess of the usual rent. Appellant is correct that prejudgment interest does not apply to punitive damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.007 (Vernon 1997) ("Prejudgment interest may not be assessed or recovered on an award of exemplary damages."); *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 798 (Tex. 1994) ("Punitive damages, being inherently penal in character, should not be enlarged by the imposition of prejudgment interest in the absence of an express legislative intent to do so."). However, appellants cite no authority holding that an agreed rental rate during periods of holding over exceeding the rental rate for periods during the lease constitutes punitive damages. The lease does not state the holdover rent exceeding the usual rent is a penalty. Section 13.1 does not punish appellants; it instead requires that if appellants make the decision to hold over beyond the term of the lease, they must pay a higher rate for doing so. Appellants were on notice that LaSalle considered the lease terminated, yet they chose to stay, having agreed in the lease to pay 1.5 times the usual rent for doing so.

---

**7.** The lease defines the "Overdue Rate" as the "Interest Rate" plus three percent, and it defines the "Interest Rate" as Citibanc, N.A.'s prime rate plus two percent; thus, the overdue rate is the prime rate plus five percent.

In support of their argument, appellants cite *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476–77 (Tex.1988), and *Dunn v. Southern Farm Bureau Casualty Insurance Co.*, 991 S.W.2d 467, 479 (Tex. App.-Tyler 1999, pet. denied). These cases hold that prejudgment interest does not apply to statutory penalties imposed for wrongdoing, usury in *Steves Sash & Door Co.* and failure by an insurance company to pay a claim timely in *Dunn*. These cases do not involve contractually agreed amounts, and the case before us does not involve statutory penalties. The cases cited by appellant are distinguishable.

Appellants also assert that "LaSalle itself characterized holdover rent as a penalty in pleading to the district court." Appellants cite to LaSalle's brief in support of its motion to stay arbitration and LaSalle's motion and brief for partial summary judgment where LaSalle stated in a footnote, "Additional penalties are imposed upon Tenant's default, including by way of example, the forfeiture of its security deposit and the obligation to compensate Owner at a rate equal to 1.5 times the agreed upon rent and other charges if Tenant fails to vacate as required."[8] Appellants do not assert these statements constitute judicial admissions. Nor do they cite authority requiring the courts to construe section 13.1 consistent with LaSalle's characterization of that term. Courts do not consider extraneous evidence in construing an unambiguous contract. *Fiess*, 202 S.W.3d at 747; *Friendswood Dev. Co.*, 926 S.W.2d at 283. Section 13.1 is not ambiguous; accordingly, we do not consider extraneous evidence in construing it. We conclude appellants have not shown prejudgment interest on the damages for unpaid holdover rent is barred by statutes and cases disallowing prejudgment interest on punitive damages and statutory penalties.

■ In a breach of contract case, the prejudgment interest rate is the same as the postjudgment interest rate. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex. 1998). Postjudgment interest—and therefore prejudgment interest—in a contract case where the contract provides for interest is the lesser of the interest rate specified in the contract or eighteen percent a year. TEX. FIN.CODE ANN. § 304.002 (Vernon 2006). If the contract does not provide for interest, then the postjudgment and prejudgment interest rate is five to fifteen percent a year based upon the prime rate. *See id.* § 304.003; *see also ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 319 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (applying section 304.003 for prejudgment interest rate).

■ The parties agree that during the period of holding over, Leasco paid the Minimum Rent. LaSalle does not assert that Leasco failed to pay any Participating Rent or Additional Charges as defined in the lease. Leasco failed to pay the additional fifty percent of Rent due during the period of holding over, but that amount is not part of the Minimum Rent, Participating Rent, or Additional Charges as defined by the lease. Accordingly, it is not subject to the late charge of section 3.2.

8. Appellants also cite to the testimony of Robert White, an accountant by training, who was Meridien's Senior Vice President of Development and was the chief negotiator for Meridian on the lease. Concerning the holdover rent provision, White testified, "It seems to me that the holdover rent provision is a penalty provision in its own right. I am not sure. It seems like some kind of double jeopardy to—to have interest on that penalty as well." White, as an employee of Meridian, did not purport to speak for LaSalle.

LaSalle argues that holdover rent is merely "rent" for the period of holding over, that it is still "rent" and should be treated as such. The holdover rent may be a form of rent, but it is not one of the carefully defined categories to which the late charge applies. Had the parties intended the late charge to apply to holdover rent under section 13.1, the lease would have so provided. Because it does not, LaSalle is not entitled to the late charge on the unpaid holdover rent.

■ In its motion for rehearing, LaSalle asserts entitlement to statutory prejudgment interest under subchapter B of chapter 304 of the finance code. "This subchapter applies only to a wrongful death, personal injury, or property damage case...." TEX. FIN.CODE ANN. § 304.101 (Vernon 2006). LaSalle asserts it is entitled to prejudgment interest under this statute because it suffered "property damage." We disagree. Both this Court and the Texas Supreme Court have held that "property damage" means "claims for damage to tangible property, not economic loss or loss of economic opportunity." *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 530; *Spangler v. Jones*, 861 S.W.2d 392, 398 (Tex.App.-Dallas 1993, writ denied) (en banc); *see also de la Garza v. de la Garza*, 185 S.W.3d 924, 928 (Tex.App.-Dallas 2006, no pet.) (damages for breach of agreement incident to divorce are not subject to subchapter B's prejudgment interest provisions). LaSalle asserts that in *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786 (Tex.App.-Dallas 2007, no pet.), we affirmed an award of prejudgment interest under subchapter B in a breach of contract action. In *Lamajak, Inc.*, we held "Frazin's claim for breach of contract fails." *Id.* at 794. We stated that Frazin "should have been awarded [prejudgment interest] pursuant to section 304.104 of the Texas Finance Code" on his

quantum meruit cause of action. *Id.* at 798. The case before us, however, does not concern prejudgment interest on a claim for quantum meruit; accordingly, *Lamajak, Inc.* is distinguishable.

LaSalle also asserts it is entitled to prejudgment interest of six percent a year under section 302.002 of the finance code. *See* TEX. FIN.CODE ANN. § 302.002 (Vernon 2006). However, this Court has held that section 302.002 does not apply to prejudgment interest. *See Lamajak, Inc.*, 230 S.W.3d at 797–98.

■ LaSalle asserts in its motion for rehearing that it is entitled to prejudgment interest under the common law. Appellants assert LaSalle has waived this issue by not raising it in its cross-appellant's brief. We disagree. In its briefs on appeal, LaSalle was defending the trial court's judgment on the issue of prejudgment interest; it was not seeking to alter that part of the judgment. Accordingly, it was not necessary for LaSalle to raise this issue in a cross-appeal.

■ LaSalle is entitled to common-law prejudgment interest on damages for breach of the lease agreement, i.e., the damages for the unpaid portion of the holdover rent. *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 532; *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex.App.-Corpus Christi 2001, no pet.). LaSalle argues the "Interest Rate" defined in section 1.76 of the lease should be applied pursuant to section 304.002 of the finance code. We disagree. Under section 304.002 of the finance code, the court applies as judgment interest the interest rate specified in the contract when the contract provides for interest. Section 1.76 of the lease defines the term "Interest Rate," but that section does not purport to make it apply to unpaid holdover rent under section 13.1 of the lease. Because the lease does not provide for the "Interest

Rate" in section 1.76 to apply to the unpaid holdover rent, the "Interest Rate" does not apply under section 304.002 of the finance code.

The applicable prejudgment interest rate must be determined under section 304.003, which applies when section 304.002 does not apply. *See* Tex. Fin.Code Ann. § 304.003(a). We sustain appellant's fourth issue, and we remand the issue of prejudgment interest to the trial court for further proceedings.

## FRAUD

In the fifth issue, appellants assert the trial court erred in granting summary judgment on their fraud claim and that the trial court erred in proceeding to decide the motion for summary judgment without allowing adequate discovery.

■ Appellants' fraud claim alleged fraud in the inducement in the agreements to extend the time for LaSalle to give notice of intent to purchase Leasco for fair market value. They alleged LaSalle, at the time it signed the extension agreements, had no intent to pay the fair market value for Leasco and that it falsely represented it would pay the fair market value. Appellants assert that the documents showing LaSalle considered Leasco's fair market value to be $0 is evidence that LaSalle did not intend to pay Leasco's fair market value. We disagree. That LaSalle considered Leasco's fair market value to be $0 is not evidence that LaSalle would not have paid a higher sum determined in accordance with the lease's arbitration provisions.

■ Appellants also assert the extension agreements lacked consideration.[9] We disagree. In exchange for agreeing to extend the time for LaSalle to decide

whether to purchase Leasco, appellants had the right to continue to operate the hotel, something they would have lost much earlier if LaSalle had decided to purchase Leasco following the original timeline in the lease.

■ Appellants also assert the trial court erred in deciding the motion for summary judgment after denying appellants discovery into those claims. Appellants argue they were prevented from presenting evidence in support of their fraud claim because the trial court refused to allow them to depose LaSalle's principals and struck the factual averments from the affidavit of appellants' principal witness. Appellants, however, make no argument and cite no authorities showing the trial court erred in denying the depositions of LaSalle's principals or in striking the factual averments from the affidavit of appellants' witness. We conclude this assertion is not properly briefed and is waived. *See* Tex.R.App. P. 38.1(h).

Appellants also assert the court's ruling on the motion for summary judgment was premature, citing *Levinthal v. Kelsey–Seybold Clinic, P.A.*, 902 S.W.2d 508 (Tex. App.-Houston [1st Dist.] 1994, no writ). In that case, the court held the trial court erred in refusing to continue a hearing on the defendant's motion for summary judgment when the case had been on file for only three months, the plaintiff had filed material discovery requests and exercised due diligence in attempting to obtain the needed discovery before the summary judgment hearing, and the trial court allowed no time for discovery. *Id.* at 512. In this case, by contrast, appellants' fraud claim had been on file over a year, appellants do not explain what evidence shows

---

9. It is not clear how this argument concerning lack of consideration falls under appel-

lants' fraud issue, but we address it in the interest of justice.

they used due diligence in attempting to obtain needed discovery after filing their claim, and the record does not show appellants moved to continue the summary judgment hearing. *Levinthal* does not show the trial court erred in deciding LaSalle's motion for summary judgment when it did.

We overrule appellants' fifth issue.

## SECURITY DEPOSIT

■ In their sixth issue, appellants contend the trial court undervalued the stock comprising the security deposit. When Leasco entered into the lease, it purchased shares of LaSalle's stock that became the security deposit. LaSalle sold the stock on May 14, 2003, when it was worth $988,903. The trial court offset LaSalle's damages with the amount of the security deposit. Appellants observe that on July 14, 2003, the day they vacated the hotel, the stock was worth $1,133,911, and on May 28, 2005, the last day of the trial, the stock was worth $2,076,839. Appellants argue that one of these later dates with a higher value should be the date at which the security deposit should be valued. Under section 15.1(b) of the lease, LaSalle had the right to liquidate the security deposit after the occurrence of an event of default.[10] However, appellants argue "that event of default was not made final ... until after the trial." Appellants provide no explanation for why the default was not "final" and why LaSalle was not able to enforce the remedies provided by the lease and the law after February 17, 2002, the date given in the notice of default for appellants to cure their default. We overrule the sixth issue.

## JOINT AND SEVERAL LIABILITY

■ In its sole crosspoint, LaSalle asserts the trial court erred in not making Meridien jointly and severally liable with Leasco for the holdover rent. Meridien was not a party or signatory to the lease, and LaSalle did not show that Meridien had promised to pay holdover rent. LaSalle asserts Meridien should be made liable for the unpaid portion of the holdover rent as trespass damages for the reasonable rental value during the period of holding over. However, LaSalle was paid the regular "Rent" during the time appellants held over. LaSalle has not shown and does not explain why that amount was not the reasonable rental value.

LaSalle cites *Natural Gas Pipeline Co. of America v. Pool*, 30 S.W.3d 618 (Tex. App.-Amarillo 2000), *rev'd*, 124 S.W.3d 188 (Tex.2003). In that case, the appellants were a gas-lease lessee and operator who had allowed the lease to lapse due to nonproduction. The court of appeals held the lessee and the operator were jointly and severally liable for the trespass damages of the value of the minerals wrongfully removed from the property. *Id.* at 635, 638. The damages awarded in *Natural Gas Pipeline* were common-law trespass damages. Here, the damages at issue were breach of contract damages dictated by the terms of a lease that Meridien did not sign.

■ LaSalle also argues that Meridien was subject to the holdover rent provision of section 13.1 of the lease because in a separate agreement, the Assignment, Assumption and Modification of Management Agreement (Assignment Agreement), signed by Meridien as "Manager," as well as by Leasco and LaSalle, the parties incorporated by reference the terms of the

10. Section 15.1(b) provides in relevant part, "Tenant agrees that Landlord may at any time, after the occurrence of an Event of Default and without notice and demand to Tenant, ... (iii) receive all proceeds of the Security Deposit...."

lease.[11] As LaSalle observes, when parties incorporate the terms of a second document into an agreement, those terms become part of the agreement. *See, e.g., Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 373 (Tex.App.-Corpus Christi 2005, no pet.). The terms of the lease provided that "Tenant," i.e., Leasco, was subject to section 13.1's holdover-rent provisions. The incorporation provision in the Assignment Agreement did not purport to create liability for Meridien under section 13.1 of the lease.

In support of its argument that incorporation of the lease into the Management Agreement made Meridien subject to section 13.1's holdover rent provisions, LaSalle cites three cases. *See Ins. Co. of N. Am. v. Aberdeen Ins. Servs.*, 253 F.3d 878 (5th Cir.2001); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774 (Tex.2006) (orig.proceeding); *In re C & H News Co.*, 133 S.W.3d 642 (Tex.App.-Corpus Christi 2003, orig. proceeding). The two Texas cases did not involve the issue of whether in the contract at issue, the incorporation by reference of a second contract that imposes duties and liabilities on a third party makes the parties to the contract at issue subject to those same duties and liabilities. Thus, those cases are not applicable. In the federal case, the court observed, "It is well settled that where a contract is incorporated by reference into a subcontract, the subcontractor is conclusively presumed to undertake the work subject to the conditions and limitations of the prime contract." *Ins. Co. of N. Am.*, 253 F.3d at 886 (citing *Hartwell v. Fridner*, 217 S.W. 231, 235 (Tex.Civ.App.-Beaumont 1919, writ dism'd w.o.j.)). This case, however, does not involve incorporation of a general contract into a subcontract; thus, *Insurance Co. of N. America* is distinguishable.

LaSalle also argues Meridien conceded it is bound to the terms of the lease because it brought suit seeking a declaration of its rights and brought claims to enforce its rights under the lease. Meridien sought a declaration that section 22.22 of the lease was unenforceable, and it sought injunctive relief preventing the transition of the hotel before determination of Leasco's fair market value. That Meridien may have had rights under the lease it sought to protect did not make it subject to the duties and liabilities the lease imposed on Leasco.

We conclude the trial court did not err in refusing to make Meridien jointly and severally liable with Leasco for the holdover rent. We overrule LaSalle's cross-point.

## CONCLUSION

We modify the judgment in part to vacate the award to LaSalle of disgorgement of service fees against Meridien, we vacate the award of prejudgment interest on the damages for breach of the lease, and we remand that issue to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

11. The Assignment Agreement stated, "WHEREAS this Agreement is made in connection with the execution of a certain Lease between Assignor [LaSalle] and Assignee [Leasco], dated as of the date hereof, with respect to the Premises (the 'Lease') the terms, conditions, and provisions of which are hereby incorporated herein by reference...."