# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-40606

In the matter of: AMELIA VICTORIA KELLY,

      Debtor

------------------------------

MATTHEW D. WIGGINS,

      Appellant

v.

JANET NORTHRUP, Trustee,

      Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:14-CV-200

Before JONES and SMITH, Circuit Judges, and BOYLE,* District Judge.

EDITH H. JONES, Circuit Judge:**

This appeal arises from an adversary proceeding in the bankruptcy court. Janet Northrup, the chapter 7 trustee of Amelia Kelly's bankruptcy

---

\* District Judge of the Northern District of Texas, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40606

estate, sued Matthew Wiggins for trespass based on his operation of a bed-and-breakfast in a house that Kelly owned. Northrup prevailed and received a judgment for over $155,000. The district court affirmed on appeal. We MODIFY the judgment in part and otherwise AFFIRM.

## BACKGROUND

In 2006, Kelly purchased a house at 701 Bay Avenue in Kemah, Texas for over $693,000. In order to purchase the home, Kelly executed a note, payable to First Franklin Bank, which was secured by a deed of trust on the property. Kelly's plan was to operate the property as a bed and breakfast.

Three years later, Wiggins became her partner in the bed and breakfast enterprise. Wiggins loaned her money (allegedly $400,000, but this was not in evidence before the bankruptcy court) and in return Kelly executed a deed of trust on the Bay Avenue property in his favor.

Kelly never paid Wiggins anything. Just seven months later, in January 2010, Wiggins's trustee foreclosed on Kelly's interest in the property. Wiggins bought the property at the subsequent foreclosure sale and took possession.

In February 2011, Wiggins refinanced the property through Texas Citizens Bank (TCB). Wiggins executed a note for $1,000,000 and a deed of trust on the Bay Avenue property in favor of TCB. He used approximately $706,000 of the loan amount to pay off Kelly's First Franklin note.

Later that month, Kelly sued Wiggins in the 122nd District Court in Galveston County, Texas seeking, *inter alia,* to void the foreclosure. After a trial in February 2012, the state court entered a judgment that the foreclosure was void and there were no valid agreements between Kelly and Wiggins. The court awarded title and possession to Kelly, but granted Wiggins a $660,000 judgment lien on the Bay Avenue property in recognition of the money he had spent to purchase, preserve, and improve the property.

2

No. 15-40606

In spite of the judgment, Wiggins remained in possession of the Bay Avenue property and operated it as a bed and breakfast called "Captain's Quarters."

In October 2012, Kelly filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. This was converted to a chapter 7 petition less than one month later. Northrup was appointed as the trustee of Kelly's chapter 7 bankruptcy estate. Before the conversion, Wiggins moved for, and received, relief from the stay to foreclose on the property, and Northrup, after her appointment, did not object.

In January 2013, however, Northrup filed this adversary proceeding, demanding that Wiggins vacate the property and seeking trespass damages against him. The bankruptcy court held a trial in November 2013 and entered judgment one month later. The bankruptcy court found that the Bay Avenue property was owned by the bankruptcy estate (because Kelly retained only a limited interest therein) and was subject to TCB's first lien and Wiggins's second lien. The court also found that Wiggins was liable for trespass from the date he took possession of the property following his purchase at the voided foreclosure sale until the present.

Several months later, the court awarded trespass damages, based on a reasonable rental rate for the property from January 2010 until February 2014, in the amount of $196,000. The bankruptcy court, however, allowed Wiggins an offset for the amount he paid in property taxes during that period, thus reducing the judgment to $155,502. The court rejected Wiggins's additional offset claims for his payment of the insurance on the Bay Avenue property and note payments to First Franklin and TCB.

Wiggins timely appealed to the district court, which affirmed in all aspects relevant to this appeal. Wiggins now timely appeals to this court.

No. 15-40606

## DISCUSSION

In a bankruptcy appeal, when the district court is the court of first review, this court applies "the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003). Thus, we review the bankruptcy court's legal conclusions de novo and the court's factual findings for clear error. *Id.*

On appeal, Wiggins challenges both the bankruptcy court's finding of trespass liability and its damages calculations. We discuss each issue in turn.

## I.     Wiggins's status as a mortgagee-in-possession

Wiggins argues initially that, instead of being a trespasser at the Bay Avenue property, he was a mortgagee-in-possession under Texas law and thus lawfully in possession of the house. *See, e.g.*, *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 74 (Tex. App.—Fort Worth 2005, no pet.). Northrup challenges this argument while also contending that Wiggins waived the issue by not raising it before the bankruptcy court.

Wiggins has indeed waived this argument. In the bankruptcy court, Wiggins testified that he believed his possession lawful under the 2009 deed of trust. But he never articulated or argued a mortgagee-in-possession theory in his pleadings or at trial, nor did he cite any case that would establish his lawful possession under Texas law. To preserve an argument for appeal, it must be "raised to such a degree that the trial court may rule on it." *Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 159–60 (5th Cir. 2015) (quoting *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1128 (5th Cir. 1993)). Moreover, "[i]t is well established that we do not consider arguments or claims not presented to the bankruptcy court." *Gilchrest v. Westcott (In re Gilchrest),* 891 F.2d 559, 561 (5th Cir. 1990). It is certainly not enough to put facts into evidence that *could* support a legal theory

4

without identifying the theory, the legal significance of those facts, and any favorable case law.  Thus, Wiggins has waived his mortgagee-in-possession argument.

## II.    Damages barred by res judicata

Wiggins's first argument against the damage award is that the trespass damages for the period preceding the state court judgment are barred by res judicata because Kelly could have sued for them in her state court litigation. *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

Again, Wiggins has waived this argument by failing to present it to the bankruptcy court.  Wiggins's answer to the adversary complaint stated that he planned to raise res judicata as an affirmative defense, but he did not specify how he believed res judicata applied.  The parties' joint pretrial statement and Wiggins's proposed findings of fact and conclusions of law list res judicata as a contested issue of law, but only as applied to Northrup's attempt to relitigate facts from the November 2012 relief from stay proceedings: "[N]amely that Wiggins was not adequately protected and was entitled to pursue all of his available rights under state law, including foreclosure of the property."

The first time Wiggins raised the res judicata effect of the state court judgment on his trespass damages was in the designation of issues on appeal to the district court.  *See* Fed. R. Bankr. P. 8009(a)(1)(A).  This is simply too late.  To preserve this argument, Wiggins must have first presented this iteration of the res judicata defense to the bankruptcy court.  *See Gilchrest*, 891 F.2d at 561.  It is waived.

5

No. 15-40606

### III.    Damages during the period after the property was claimed as exempt

Wiggins contends that Northrup had no right to seek damages after Kelly claimed the property as exempt from her bankruptcy estate under 11U.S.C. § 522(*l*).  He asserts that the property was, at that point, outside of the estate and thus Northrup had no capacity to seek damages for trespass. This argument may be incorrect on the merits, *see Schwab v. Reilly*, 560 U.S. 770, 781–82, 130 S. Ct. 2652, 2661–62 (2010), but in any event, it is also waived because Wiggins never raised it with the bankruptcy court.  In arguing that the issue is properly preserved, Wiggins cites only his brief before the district court and the district court's opinion, but the citations prove the insufficiency of error preservation.

### IV.    Offsets to trespass damages

Finally, Wiggins argues that he is entitled to offset the trespass damages by his insurance payments and note payments to First Franklin and TCB. Wiggins properly preserved this contention in the bankruptcy court. Furthermore, we agree that the bankruptcy court erred in refusing these offsets.

"[T]he measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less."  *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 921 (Tex. 2013) (quoting *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.).[1]    When calculating trespass damages in cases involving rental property, it makes sense to begin with a reasonable rental rate.  *See id.* at 921–22.  In this case, the bankruptcy court found—based on Wiggins's testimony—

---

[1] *See also Stevenson v. E.I. DuPont De Nemours & Co.*, 327 F.3d 400, 408 (5th Cir. 2003) ("Recovery for temporary trespass is limited to the 'amount necessary to place the owner of the property in the same position he occupied prior to the injury.'") (quoting *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978)).

No. 15-40606

that the reasonable rental rate was $4,000 per month.  Wiggins admits and we agree this was not a clearly erroneous finding.

Next, adjustments must be made to this reasonable rental rate to account for the facts underlying the trespass.  *See Mullendore v. Muehlstein*, 441 S.W.3d 426, 428 (Tex. App.—El Paso 2014, pet. abated) ("The calculation of damages for temporary injuries to real property should be tailored to the circumstances of the specific case.").  This is evident from the Texas Supreme Court's admonition that damages in a trespass case endeavor to make the victim whole, not provide a windfall.  The bankruptcy court correctly applied this principle when it reduced the total damages by the amount of taxes Wiggins paid on the property.  Taxes were owed regardless of who possessed the property.  Since Northrup did not make those payments, awarding her the full amount of a rental rate without deducting Wiggins's tax payments would constitute a windfall.

This approach, adjusting the reasonable rental rate to account for the factual circumstances of the trespass, comports with the limited Texas case law on trespass damages.  *See Coinmach*, 417 S.W.3d at 920 ("[W]e have rarely addressed trespass damages in detail . . . .").  For instance, in *Mangham v. Hall*, a case cited with approval in *Coinmach*, *id.* at 921 & n.7, a plaintiff sued for damage done to its business due to trespass.  564 S.W.2d 465, 468–69 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.).  The trial court had calculated the damages based on projected gross receipts.  *Id.* at 470.  But the court of appeals vacated the plaintiff's damages award and remanded for a consideration of the proper measure of damages: net profits, not gross receipts.  *Id.*  In doing so, the court stressed that the trial court must ascertain the plaintiff's precise expenses to calculate net profits.  *Id.* at 470–71.  An award of gross receipts failed to account for the fact that the plaintiff's lost business would have generated increased expenses in addition to increased profits.  *Id.*

7

at 470. The court stated that allowing the plaintiffs to recover gross receipts would operate as a "windfall" and "place them in a better financial condition than they would have occupied had the trespasses not occurred." *Id.*[2]

The bankruptcy court's failure also to adjust the reasonable rental rate by deducting the insurance and note payments is a windfall for Northrup. Wiggins testified that the "fair market rental" value of the property was $4,000 per month. As the gross rental rate,[3] that rate would have covered all the regular expenses of maintaining and operating the rental property. *See Rexam Bev. Can Co. v. Bolger*, 620 F.3d 718, 733 (7th Cir. 2010) ("In a gross rent situation, a landlord needs to use some of the rent payments (or other funds under his control) to cover utilities, insurance, taxes, and other 'costs and expenses of maintaining the property.'"). The property's expenses would

---

[2] We recognize that the Restatement (Second) of Torts provides that a trespass plaintiff "is entitled to recover as damages for the loss of the value of the use, *at least* the rental value of the chattel or land during the period of deprivation." § 931, cmt. b (1979) (emphasis added); *see also* 1 Dan B. Dobbs, Law of Remedies § 5.8(2), at 789 (2d ed. 1993) ("Use of the objective rental value measure . . . means that[:]" "whether the trespasser actually gained any benefit from the land is not controlling and he remains liable for rental value even if he lost money in his use of the land" and "plaintiff is entitled to recover rental value even if the plaintiff himself could not reach the land, did not intend to use it, and would not have rented it to others.").

This absolutist view that reasonable rental value sets the floor for trespass damages finds some support in Texas case law. *See City of Austin v. Teague*, 570 S.W.2d 389, 394 (Tex. 1978) ("Loss of rentals is an appropriate measure of damages for the temporary loss of use of land. Rental value is 'that amount which, in the ordinary course of business, the premises would bring or for which they could be rented, or the value, as ascertained by proof of what the premises would rent for, and *not the probable profit which might accrue*.'") (citations omitted and emphasis added) (quoting 76 C.J.S. Rental at 1168 (1952)).

However, this view finds no foothold in the Texas Supreme Court's most recent (and thorough) pronouncement on trespass damages, *Coinmach*, where *Teague* is not even mentioned or cited. Furthermore, one Texas appeals court recently dismissed *Teague*'s language on rental value as dicta. *See Mullendore*, 441 S.W.3d at 429.

[3] Whether the $4,000 reasonable rent is gross or net of expenses is not explicit in the record but can be inferred from the bankruptcy court's ruling: it must be gross. Otherwise, it would have been inappropriate for the bankruptcy court to subtract taxes from the rental value net of expenses.

necessarily have included insuring the property and paying the notes: the notes would remain payable no matter who possessed the property and the deeds of trust required the property to be insured. Awarding Northrup the full amount of the rental rate without deducting Wiggins's payments on behalf of the property constitutes a windfall.

The bankruptcy court, however, found that the insurance and note payments should not be offset from the damages award because they were made "primarily for [Wiggins's] benefit." But that misses the point of the Texas Supreme Court's admonition in *Coinmach* that the proper measure of trespass damages is the amount necessary to make the plaintiff whole—*no more* and no less. The point, therefore, is that Northrup should not be able to recoup those payments as "expenses" built into the reasonable rental rate when Wiggins made the payments. Put otherwise, had Wiggins failed to make these payments (and the banks, counterintuitively, had not foreclosed), Northrup would have used up all of the "fair market rental" value—and more—to reinstate the loans; she should not be compensated for costs of preserving the property that she did not have to bear.

In this case, unfortunately for Northrup, that leaves her with nothing. Northrup has the burden of proving damages. *See Mangham*, 564 S.W.2d at 469. The bankruptcy court concluded that the total damages, based on the reasonable rental rate, were $196,000. But as the bankruptcy court recounts in the findings of fact section of its opinion, Wiggins presented evidence that he paid $40,498 in property taxes, $12,000 to insure the property from 2012 to 2013, and $205,900 in note payments (attributable to the property) to First Franklin Bank and TCB. He also testified that the Bay Avenue property was "not profitable" during the time he operated it. Northrup did not contradict these figures, nor did she present evidence of her own describing what portion of the $4,000 per month would be net profit and what portion constituted

No. 15-40606

expenses.  Northup also testified that the estate had no money to insure or maintain the property or operate it as a bed and breakfast.  Since Wiggins's evidence was uncontroverted, there can be no clear error in these findings. Based on the above figures and testimony, after deducting the relevant expenses—taxes, insurance, and note payments—the Bay Avenue property operated at a loss.[4]  Making Northrup whole, as the Texas Supreme Court instructs we must, means awarding her nothing.

### CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is **MODIFIED** to award $0 to Northrup as damages for trespass.  To the extent that Wiggins challenged other aspects of the judgment, the judgment of the district court affirming the judgment of the bankruptcy court is itself **AFFIRMED**.

---

[4] This should come as no shock.  According to one bed and breakfast industry expert, "the industry doesn't track the failure rate of B&Bs but . . . overleveraging and overpaying . . .'cause failures on a fairly large scale.'"  Alyssa Abkowitz, *A New Crop of Bed and Breakfasts: Healthy Demand for Intimate Lodging is Spurring a New Generation of Investor-Innkeepers*, Wall St. J., Nov. 27, 2013, http://www.wsj.com/articles/SB10001424052702304337404579212391514154998