**Affirmed and Memorandum Opinion filed November 6, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00541-CV

---

### AMELIA V. KELLY, Appellant

### V.

### MATTHEW D. WIGGINS, JR. AND D. L. HAMMAKER, Appellees

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 13-CV-1392**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final judgment entered in favor of appellees Matthew D. Wiggins, Jr. and D. L. Hammaker concerning possession of a piece of real property, and the denial of the appellant's alternative motion for factual determination. Appellant Amelia Kelly sought declaratory judgment as well as legal and equitable claims arising from the entry of a 2012 final judgment and a 2014 post-judgment judicial foreclosure order. In a joint motion in the trial court, the parties

sought entry of judgment and Kelly also sought, alternatively, a motion for determination of contested issues. Concluding the claims in this case are collateral attacks on the validity of a prior adverse judgment, we affirm.

## I. Background

### A. Factual

*The Property*

In 2006, Kelly purchased a large house being operated as a bed and breakfast at 701 Bay Avenue in Kemah, Texas. To purchase the property, Kelly executed a mortgage note, payable to First Franklin Bank, in the amount of $693,750, which was secured by a deed of trust on the property. She did not reside in the property and did not designate the property as her homestead. Because the property needed updating, Kelly began renovation, tearing out walls, and removing appliances. Shortly thereafter, in an attempt to obtain additional financing, Kelly conveyed by deed the property to William Kelleher.

Three years later, in June 2009, Kelly sought to buy out Kelleher's interest in the property and approached Wiggins for a loan. Wiggins became her partner in the bed and breakfast enterprise. Kelly executed a promissory note in the original principal amount of $400,000, payable on demand to Wiggins. Kelly executed a deed of trust with respect to the property, to secure payment of the note. With funds borrowed from Wiggins, Kelly repurchased the property from Kelleher.

Kelly never paid Wiggins anything. In December 2009, Wiggins gave notice of a foreclosure sale for default on the promissory note, to take place on January 5, 2010. On January 5, 2010, Wiggins' designee, D. L. Hammaker, conducted a nonjudicial foreclosure sale of Kelly's interest in the property, and sold the property

to Wiggins. Wiggins took possession of the property and began paying the monthly mortgage to First Franklin Bank.

In February 2011, Wiggins refinanced the property through Texas Citizens Bank (TCB). Wiggins executed a note for $1,000,000 and a deed of trust on the property in favor of TCB. He used approximately $706,000 of the loan amount to pay off Kelly's First Franklin Bank note.

*The Original Case Tried to Jury*

After Wiggins executed the note payable to TCB, in February 2011, Kelly sued Wiggins in the 122nd District Court in Galveston County, Cause No. 11-CV-325, seeking, *inter alia*, a court decree voiding the foreclosure. Trial commenced in February 2012, and the trial court issued its final judgment on June 22, 2012, declaring the January 2010 foreclosure void and decreeing there were no valid agreements between Kelly and Wiggins. The trial court awarded title and possession to Kelly but granted Wiggins a $660,000 judgment lien on the property in recognition of the money Wiggins had spent to purchase, preserve, and improve the property.

Both parties filed a notice of appeal from the 2012 judgment. The appeals, which were assigned to this Court, were subsequently dismissed on the motion of the respective parties.

After issuance of this court's mandate, the trial court entered orders that the judgment be carried into execution. Wiggins thereafter sought to enforce the judgment issued. Specifically, Wiggins requested entry of an order of judicial foreclosure as to the property. After several hearings, briefing, and two petitions for mandamus in the court of appeals, on June 23, 2014, the trial court signed an order of judicial foreclosure of the lien created in the June 22, 2012 final judgment.

3

In August 2014, Kelly filed a notice of appeal in this Court, contesting the trial court's order of judicial foreclosure of the property.

On January 12, 2015, a sheriff's execution sale deed to Wiggins for the property was filed in the real property records of Galveston County.

This Court held on May 15, 2015, that the judicial foreclosure order was a post-judgment enforcement order rather than a final appealable order; thus, we dismissed the appeal for lack of jurisdiction.

*The Bankruptcy Case*

In October 2012, Kelly filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, which subsequently was converted to a liquidation under chapter 7 in November 2012. Janet Northrup was appointed as the trustee of Kelly's chapter 7 bankruptcy estate. Before the conversion, on October 29, 2012, Wiggins moved for, and received, relief from the bankruptcy court automatic stay and Wiggins and Kelly were permitted to "exercise their rights and remedies under state law" as to the property. Northrup did not object. Subsequently, the bankruptcy court entered an order the property was abandoned by the bankruptcy estate. The bankruptcy court also noted the existence and validity of the lien on the property created by the final judgment in the original case, in Wiggins' favor.

Despite the 2012 judgment, Wiggins remained in possession of the property and operated it as a bed and breakfast called "Captain's Quarters." Wiggins maintained the property, paid insurance, and paid the ad valorem taxes on the property.

In January 2013, Northrup filed an adversary proceeding, demanding that Wiggins vacate the property and seeking trespass damages against him. After conducting a trial in November 2013, the bankruptcy court found that the property

was owned by the bankruptcy estate. The court also found that Wiggins was liable for trespass from the date he took possession of the property following his purchase at the voided foreclosure sale until the present, awarding damages from January 2010 until February 2014, allowing Wiggins an offset, and reducing the judgment to $155,502.

Wiggins appealed to the district court, which affirmed. Wiggins, in turn, appealed to the Fifth Circuit Court of Appeals. On April 12, 2016, the Fifth Circuit modified the judgment of the bankruptcy court to award $0 to Northrup as damages for trespass. To the extent Wiggins challenged other aspects of the judgment he waived those challenges by failing to raise them with the bankruptcy court; thus, in all other respects, the judgment of the district court affirming the judgment of the bankruptcy court was affirmed. *See In re Kelly*, 643 Fed. Appx 400, 401–403, 405 (5th Cir. 2016).

*The Current Case*

On October 31, 2013, Kelly and Northrup filed an original petition and application for temporary restraining order, and temporary and permanent injunctions in the 405th District Court in Galveston County, Cause No. 13-CV-1392, against Wiggins and Hammaker. In their petition, they asserted "Defendants have successfully argued in bankruptcy court that jurisdiction lies in the state courts." Wiggins filed a notice of removal to the pending adversary proceeding in bankruptcy court.

In March 2014, after the bankruptcy estate's interest in the property was abandoned, the case was remanded back to the 405th District Court in Galveston County, Cause No. 13-CV-1392, and was transferred to the 122nd District Court in Galveston, for further proceedings. In July 2014, Northrup filed in the state trial court a motion to dismiss, declaring she no longer desires to prosecute the

5

bankruptcy estate's claims against Wiggins and Hammaker, and she sought dismissal of their counterclaims against the bankruptcy estate. The trial court dismissed Northrup in all respects from the litigation on July 31, 2014.

On June 10, 2015, Wiggins and Hammaker moved to dismiss Kelly's claims for trespass, abuse of process, negligence, waste, nuisance, and declaratory judgment quieting title. The record before us does not reflect a hearing was either requested or set on the motion to dismiss.

After two trial settings were passed and several status conferences were held, the case was reset for trial on a two-week docket call beginning on June 13, 2016. At the pre-trial hearing, the trial court and counsel conferred, and the parties agreed to reduce the contested issues to ones of law and to drop all claims other than title claims, to prepare the case for an appeal on the main issue of title. Wiggins and Hammaker continued to contest that the property was Kelly's homestead at the time the court rendered judgment in the original case in 2012. In February 2017, the trial court held another status conference.

Thereafter, in March 2017, the parties filed a joint motion for entry of final judgment after determination on contested issues, if necessary. In the factual background of the joint motion, the parties provide:

> Among the issues present in this case are Declaratory Judgment Act, legal, and equitable claims arising from the entry of a final judgment in Cause No. 11 CV 0325, *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, in the 122d Judicial District, Galveston County, Texas (the "2012 Final Judgment"), and the entry of a 2014 post-judgment Order of Judicial Foreclosure in that same cause (the "Foreclosure Order"). This case, the 2012 Final Judgment, and the Foreclosure Order all concern the "Property" referenced as 701 Bay in Kemah, Texas."

6

In the joint motion, Kelly voluntarily dismissed, without prejudice, her claims for abuse of process and/or malicious prosecution, negligence, waste, wrongful eviction, and nuisance alleged to arise from Wiggins' possession of the property ("possession claims"). The parties sought a determination as a matter of law on Kelly's claims for wrongful foreclosure, to quiet title, to try title, for permanent injunction, and for declaratory judgment ("title claims"). The contested issues in the joint motion addressed homestead and purchase money as follows:

Homestead

**Plaintiff contends** that whether the Property was her residence was at issue in Cause No. 11CV0325 and that the jury's verdict and the Final Judgment established that the Property was her residence and, although homestead was not directly at issue, established the Property as her homestead as well. Plaintiff contends that the Court may enter judgment as a matter of law in this case that the Property was Plaintiff's protected homestead at the time the Final Judgment was entered.

**Defendants contend** that the jury's verdict in Cause No. 11CV0325 and the Final Judgment establish only that the Property was Plaintiff's residence but not that the Property was her homestead. Nevertheless, Defendants contend that any homestead issue is immaterial in this case because the Court's Foreclosure Order in Cause No. 11CV0325 was based, in part, on the jury's verdict that Defendant Wiggins spent $660,000 to "purchase, preserve, and improve the [P]roperty."

Purchase Money

**Plaintiff contends** that no part of the $660,000 lien created by the Final Judgment was for her purchase of the property and that the homestead protections against forced sale prevented the entry of the Foreclosure Order in Cause No. 11CV0325, the Sheriff's foreclosure sale, and the delivery and effectiveness of the Sheriff's Deed. Alternatively, Plaintiff contends that any exception to homestead protection would only apply to that undetermined part of the $660,000 lien created by the Final Judgment that was spent for "purchase" and not for that undetermined portion that was spent for "preservation" or "improvement." Plaintiff contends that, if an issue at all, that a factual determination must be made of the amount of the $660,000 lien created

7

by the Final Judgment is for "purchase" money and an exception to the homestead protection against forced sale.

**Defendants contend** that the issue of homestead is immaterial in this case. Moreover, Defendants contend that Plaintiff is now precluded by claim preclusion and issue preclusion doctrines from obtaining a factual determination, redetermination, or allocation of the jury's findings in Cause No. 11CV325 that Defendant Wiggins spent $660,000 to "purchase, preserve, and improve the [P]roperty." Defendants contend that this Court may rule as a matter of law that any homestead protection would not prevent the entry of the Foreclosure under the purchase money exception.

Attached to the joint motion were two stipulated exhibits:

Exhibit A (stipulated facts)

Exhibit B (stipulated record)

> exhibit 1 (jury verdicts in Cause No. 11CV0325),
>
> exhibit 2 (final judgment in Cause No. 11CV0325),
>
> exhibit 3 (Fourteenth Court of Appeals' dismissal of Kelly's appeal from final judgment in Cause No. 11CV325),
>
> exhibit 4 (Fourteenth Court of Appeals' dismissal of Wiggins' appeal from final judgment in Cause No. 11CV325),
>
> exhibit 5 (order of judicial foreclosure in Cause No. 11CV325 dated June 12, 2014),
>
> exhibit 6 (trial court's findings of fact and conclusions of law in Cause No. 11CV325), and
>
> exhibit 7 (sheriff's deed to Wiggins dated January 12, 2015).

Also, in March 2017, Kelly filed an alternative motion for factual determination on the remaining title issues. In that motion, Kelly restated the contested issues filed in the joint motion for judgment.

On May 15, 2017, the trial court entered Final Judgment against Kelly and in favor of Wiggins and Hammaker, stating as follows:

> (1) The June, 2014 post-judgment Order of Judicial Foreclosure was entered by the Court to foreclose the lien on the Property created

by the June 22, 2102 Final Judgment in Cause No. 11CV0325, *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, in the 122nd Judicial District, Galveston County, Texas;

(2) Since the lien was determined to be for the purchase, preservation, and improvement of the Property, no "homestead protection" precluded entry of the 2014 post-judgment Order of Judicial Foreclosure and the Court need make no determination of fact and may rule as a matter of law.

Additionally, Kelly's possession claims and Wiggins' and Hammaker's counterclaims were dismissed without prejudice as per the parties' stipulations. Kelly's alternative motion for factual determination on the title issues was denied.

In June 2017, Kelly filed this appeal, challenging the Final Judgment and the denial of her alternative motion for factual determination.

## B.      Proceedings concerning the property

The disputes between the parties have reached several different forums over the course of six years, including:

- *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, Cause No. 11-CV-0325, in the 122d Judicial District, Galveston (final judgment).
    - *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, Cause No. 14-12-00687-CV, 2012 WL 5247354, at *1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2012) (appeal dismissed).
    - *Matthew D. Wiggins, Jr. and D.L. Hammaker v. Amelia V. Kelly*, Cause No. 14-12-00710-CV, 2013 WL 85083, at *1 (Tex. App.—Houston [14th Dist.] Jan. 8, 2013) (appeal dismissed).
    - *In re Amelia V. Kelly*, Cause No. 14-14-00789, 2014 WL 5492809, at *1 (Tex. App.—Houston [14th Dist.] Oct. 30, 2014, orig. proceeding) (relator's request to compel trial judge to vacate orders pertaining to motion by real party in interest to enforce final judgment in underlying litigation by foreclosure of relator's property was denied).
    - *In re Amelia V. Kelly*, Cause No. 14-14-00944-CV, 2014 WL 7524979, at *1 (Tex. App.—Houston [14th Dist.] Nov. 26, 2014, orig.

proceeding) (relator's second petition for mandamus, which challenged the same orders as in prior petition, was denied).

- *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, Cause No. 14-14-00605-CV, 466 S.W.3d 324, 327-330 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (dismissing appeal for lack of jurisdiction because "post-judgment orders made for the purpose of enforcing or carrying into effect a prior judgment are not subject to appeal because they are not final judgments").

- *In re Amelia V. Kelly*, Cause No. 12-80534, in the United States Bankruptcy Court for the Southern District of Texas, Galveston Division.

  - *In re Kelly*, Cause No. 12-80534-G3-7, 2013 WL 6798894, at **5-6 (S.D. Tex. Dec. 19, 2013), *supplemented by* 2014 WL 1330897, at **2-3 (S.D. Tex. Apr. 1, 2014) (bankruptcy court held Wiggins liable to estate for $155,502, which represented reasonable rental total, less taxes paid).

  - *In re Kelly*, 643 Fed. Appx. 400, 404-05 (5th Cir. Apr. 12, 2016) (affirmed bankruptcy court's opinion, as modified, to award $0 to trustee as damages for trespass and all other aspects affirmed after noting Wiggins waived *res judicata* defense by failing to raise before bankruptcy court).

- *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, Cause No. 13-cv-1392, in the 122nd Judicial District, Galveston (final judgment entered May 15, 2017, in favor of Wiggins and Hammaker and that Kelly take nothing).

  - *Amelia V. Kelly v. Matthew D. Wiggins, Jr. and D.L. Hammaker*, Cause No. 14-17-00541-CV (Tex. App.—Houston [14th Dist.] 2017) (current pending appeal).

## II.   Analysis

### A.   Appellant's Issues

In her brief, Kelly presents the following eight issues:

1.     Because the new, judicial [sic] created lien was imposed upon the property years after Ms. Kelly's claim to homestead protection arose, did the trial court err in granting summary judgment as a matter of law in the instant case without allowing Ms. Kelly to present her

10

homestead defense?

2.      Because Wiggins' deed of trust was expressly voided by the prior judgment and replaced by a new, judicially created lien subject to a homestead defense, was the trial court's order granting summary judgment as a matter of law error because the judicially created lien did not include exempted amounts or, alternatively, because the amounts that might qualify under an exemption to the bar on forced sale was not determined?

3.      Because no exception to the Texas Constitution's bar on the forced sale of a homestead was established, did the trial court err in ruling as a matter of law that an exemption from the constitutional bar applied?

4.      Did the trial court err in granting summary judgment as a matter of law because fact issues remained regarding homestead and what amount, if any, of the new, judicially created lien was solely attributable to "purchase" money and not attributable to "preservation" or "improvement"?

5.      Did the trial court err by impermissibly aiding the [sic] Wiggins to reach what was exempt property of Ms. Kelly or to reach property subject to a claim of exemption without a trial on the merits of the claim of exemption?

6.      Did the trial court err in allowing the judicial foreclosure to stand without requiring Wiggins to remove the $1,000,000 mortgage lien Wiggins had caused to burden title to Ms. Kelly's homestead, which would effectively chill any foreclosure sale upon the $660,000.00 judicially created lien?

7.      Did the trial court err in granting judgment as a matter of law in favor of Defendants because the stipulated facts and record were legally and factually insufficient to support the judgment?

8.      Did the trial court deprive Ms. Kelly of her constitutional right to a jury trial on contested facts and deprive her of her right to own property in violation of her procedural and substantive due process rights?

## B.    Collateral Attacks

Kelly's issues constitute collateral attacks on the 2012 final judgment in 11-CV-325.  "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 345–46 (Tex. 2005).  A collateral attack is impermissible if it is instituted to interpret a prior judgment entered by the same court or another court of coordinate jurisdiction.  *See, e.g., Martin v. Dosohs I, Ltd.*, 2 S.W.3d 350, 352 (Tex. App.—San Antonio 1999, pet. denied) (holding that, in Texas, a litigant may not use a declaratory judgment suit to interpret a judgment of the same or another court); *see also Cohen v. Cohen*, 632 S.W.2d 172, 173 (Tex. App.—Waco 1982, no writ) (adhering to the Texas rule that use of a declaratory judgment suit to interpret a judgment of the same or another court is an impermissible collateral attack on the previous judgment). Kelly may not challenge the validity of the 2012 final judgment in 11-CV-325 in this proceeding. A direct appeal would have been the avenue to challenge the 2012 final judgment in 11-CV 325, but Kelly chose not to appeal, and the time for appealing that judgment has long passed.

Kelly has attempted to revisit title issues related to the property in multiple forums.  Kelly cannot raise these same issues by a new suit seeking declaratory judgment as to issues in the 2012 final judgment in 11-CV-325.  Accordingly, we conclude that Kelly's arguments regarding title to the property in this declaratory judgment suit constitute impermissible collateral attacks on the final judgment made in 2012 in 11-CV-325. *See, e.g., Martin*, 2 S.W.3d at 352; *see also Cohen*, 632 S.W.2d at 173.  Therefore, the trial court properly granted judgment in favor of

Wiggins and Hammaker, and properly denied Kelly's alternative motion for factual determination.  As such, we overrule Kelly's issues.

## III.   Conclusion

The judgment of the trial court is affirmed.


/s/     John Donovan
Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown.